Loeing, J.,
delivered the opinion of the court:
This action is brought to recover payment for beef, wheat, flour, &e., supplied by the petitioner under contracts made by him with 0. M. Wozencraft, commissioner and Indian agent for the United States in California. We find the facts to be, that—
To put an end to the devastating strife then raging between the In *157 clians of California and the white population which had poured into that country on the discovery of gold there, Congress, by act of September 30, 1850, (9 Stat., 519,) appropriated $25,000 “ to enable the President to hold treaties with the various Indian tribes in the State of California,’' and by the act of February 27, 1851, (9 Stat., 572,) $25,000 more were appropriated to the same purpose.
On the 10th of October, 1850, O M. Wozencraft, Koderic McKee and George W. Barbour were appointed Indian agents by the President, under the act of September 28, 1850. But on the 15th of October,-1850, their functions as Indian agents were suspended, and they were appointed commissioners under the act of September 30,1850, to hold treaties with the Indians. In 1851, by act of February 27, (9 Stat, 586,) Congress directed that all treaties with Indians should be negotiated by such officers and agents of the Indian department as the President of the United States should designate for that purpose. And under this act the functions of Messrs. Wozencraft, McKee and Barbour as Indian agents were revised, and as such they were, by the President, “ designated to negotiate treaties with the Indians in California,” under instructions theretofore given them by the department, as commissioners.
By letter dated October 15, 1850, (S. Doc. 4, pp. 8 and 9,) the commissioners had been instructed as follows : “ As set forth in the law creating the commission, and the letter of the Secretary of the Interior, the object of the government is to obtain all the information it can with reference to tribes of Indians within the boundaries of California, their manners, habits, customs, and extent of civilization, and to make such treaties and compacts with them as may seem just and proper. On the arrival of Messrs. McKee and Barbour in California they will notify Mr. Wozencraft of their readiness to enter upon the duties of the mission. The board will convene, and after obtaining whatever light may be within its reach, will determine upon some rule of action which will be most efficient in obtaining the desired object, which is, by all possible means to conciliate the good feelings of the Indians, and to get them to ratify those feelings by entering into written treaties, binding on them towards the government and each other. You will be able to judge whether it will be best for you to act in a body, or separately in different parts of the Indian country.”
Thus empowered and instructed, the commissioners entered on their duties by convening and organizing at San Francisco, January 12, 1851, and after obtaining information from the governor of California and from the members of its legislature, then in session at San José, *158 they proceeded to the Indian country, where active hostilities were then going on ; troops of' California were in the field, and the miners had driven the Indians from the localities they cultivated into the mountains, from which the Indians issued, as opportunities offered, to steal and drive off the cattle and mules, as the only alternative for starvation.
In this state of things, the commissioners adopted the measure of bringing the Indians from their homes in the mountains and mining regions, and placing them on reservations made for them by the commissioners from the unoccupied lands in the plains; and they proceeded to enter into treaties with the Indians, in which their removal into the reservations was made an indispensible condition, aud their subsistence then was provided for for the years 1851 and 1853. And this policy of removing the Indians into reservations was approved by the department.
In pursuance of this policy, the commissioners acted jointly until May, 1851, when, in consideration of the great extent of country to be traversed in carrying out their instructions, they determined to cease acting as a board or together, and to act individually. In execution of this plan of operations they divided the State into three districts, and assigned a district to each of the three commissioners. Of this they informed the department, which finally, on May 22, 1851, acquiesced in the arrangement.
The commissioners completed their work, and the treaties they made with the Indians were submitted to and rejected by the Senate.
When the State was divided into districts and allotted, one to each commissioner, as above stated, the middle district was allotted to Mr. Wozencraft, and in his official action in his district he made the contracts with the petitioner set forth in the petition, and on the execution of the contracts he made and delivered to the petitioner twenty drafts drawn by Mr. Wozencraft, “ as 'United States Indian agent” on the Commissioner of Indian Affairs in favor of the petitioner, for various sums, amounting together to $102,460 65, which were presented for payment but were not paid.
Afterwards, by petition in this court filed October 2, 1856, the petitioner brought suit against the United States for the sum of $102,460 65 on the said drafts and contracts, and upon the hearing had, this court then held, that for the reasons set forth in the decision of the case of Samuel J. Hensly v. The United States, the petitioner was not entitled to recover. And this decision, with the papers of the case, was reported to Congress.
*159 On tbe '22d June, 1866, the ease was referred back to this court on the following joint resolution':
“ Resolved by the Senate and House of Representatives ■of the United States of America in Congress assembled, That the claim of Samuel Norris, of California, for supplies furnished the Indians of that State, under contracts made with certain commissioners, or either of them, authorized to negotiate-treaties with said Indians, and all papers relating thereto, be referred back to the Court of Claims for examination and allowance; and that in fixing the amount to be paid the claimant, the rule shall be the -actual value of the supplies furnished at the times and places of delivery, of which due proof shall be made by the claimant.
On this resolution, we hold our .duty to-be to ascertain and fix the amount of supplies furnished by the plaintiff under his said contracts with Mr. Wozencraft, and their actual value, and we find that the petitioner furnished to the United States—
1,000 beef cattle, of 450 pounds-weight each, at 15 cents per pound.'. $67;,500 00
1,600 pounds of flour and wheat, at 15 cents per pound, ■ 2,400 00
Making.■._ 69,900 00
For which judgment is to be entered for the petitioner, and a certificate to be issued' to him accordingly.